Judge Jamal N. Whitehead

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff<br><br>v.<br><br>TATENDA BANGA<br><br>Defendant. | NO. CR25-0013JNW<br><br>UNITED STATES' SENTENCING MEMORANDUM |

On January 29, 2025, Defendant Tatenda Banga was indicted for one count of alien in possession of a firearm in violation of 18 U.S.C. § 922(g)(5)(A) (Count 1) and one count of possession of a controlled substance with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) (Count 2). Dkt. No. 13, Indictment. Banga pleaded guilty to those charges on March 13, 2025. Dkt. No. 23, Plea Agmt. For his role in those offenses, the United States respectfully recommends the Court impose a custodial sentence of 37 months, to be followed by a three year term of supervised release. The Court should also impose a mandatory fee of $200.

United States' Sentencing Memorandum - 1
*United States v. Banga*, CR25-0013JNW

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## I. BACKGROUND

Banga is a citizen of Zimbabwe who is not a natural born or naturalized citizen of the United States. Plea Agmt. ¶ 8.a; PSR ¶ 10. He entered the United States illegally in at least January 2024 and December 2024. Plea Agmt. ¶ 8.a.

Banga was armed during his first known unlawful entry. Plea Agmt. ¶¶ 8.b, 8.d, 8.k. On January 3, 2024, a still image was captured by United States Customs and Border Patrol ("CBP") detection technology of an individual that investigators later determined was Banga unlawfully entering the United States between the ports of entry near Hozomeen, WA. Plea Agmt. ¶¶ 8.b; PSR ¶ 11. Banga was photographed carrying a longarm shotgun. Plea Agmt. ¶¶ 8.b, 8.d, 8.k; PSR ¶¶ 11, 22. That same day, Banga disabled a camera owned by the United States that was used for border surveillance in the area that Banga was photographed. Plea Agmt. ¶ 8.b; PSR ¶ 13.

The following day, CBP agents responded to the area to attempt to fix the camera. Plea Agmt. ¶ 8.c; PSR ¶ 14. While they were there, agents observed a person they would identify nearly a year later as Banga flee into a forested area. Plea Agmt. ¶¶ 8.c, 8k-l; PSR ¶¶ 14, 22-23. Agents pursued, but Banga got away. Plea Agmt. ¶ 8.c; PSR ¶ 14. Agents searched the area and located Banga's shotgun—a loaded 12-gauge Winchester shotgun (Serial Number: 12AZN07706). Plea Agmt. ¶ 8.d, 8.k-l; PSR ¶ 15, 22-23. Although investigators eventually confirmed that this shotgun was the same one that Banga was photographed carrying, the fingerprints on the gun did not match any records on file at that time. Plea Agmt. ¶ 8.e; PSR ¶ 16.

About a year later, on December 27, 2024, CBP responded to the area of Ross Lake, in Hozomeen, WA, to investigate suspected cross-border criminal activity based on Canadian Royal Mounted Police camera footage that showed a person on the Canadian side of the border heading south toward the U.S. border whose appearance matched the appearance of the person who had fled law enforcement in January 2024. Plea Agmt. ¶

United States' Sentencing Memorandum - 2
*United States v. Banga*, CR25-0013JNW

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

8.f; PSR ¶ 17. Although CBP did not know it at that time, Banga was the person pictured in that footage. Plea Agmt. ¶ 8.g; PSR ¶ 18.

When agents responded to the area, they saw Banga walking along the side of HWY 20 in the United States. Plea Agmt. ¶ 8.g; PSR ¶ 18. Agents questioned him and determined that he was not a citizen of the United States, he had previously been issued an F1 student visa in 2017 that expired in 2019, and he had no documents to establish that he had authorization to enter or remain in the United States. Plea Agmt. ¶ 8.h; PSR ¶ 19. Banga was taken into custody for being an alien unlawfully present in the United States. Plea Agmt. ¶ 8.h; PSR ¶ 19.

During processing, Banga's backpack and the garbage bags that he had on his person were searched. Plea Agmt. ¶¶ 8.i-j; PSR ¶¶ 20-21. In the garbage bags, agents located 649 grams (1.430lbs) of 3,4-methylenedioxymethamphetamine (MDMA). Banga was also fingerprinted, and his prints were identified as matching the prints recovered from the shotgun found January 4, 2024. Plea Agmt. ¶ 8.k; PSR ¶ 22. Agents also searched Banga's iPhone pursuant to a search warrant and found a photograph of Banga holding the shotgun, Apple Notes files journaling Banga's criminal conduct, and text and chat messages implicating Banga in drug trafficking and illegal border crossing activity. Plea Agmt. ¶ 8.l; PSR ¶ 23.

## II.  SENTENCING GUIDELINES CALCULATIONS

The government agrees with Probation's calculations of Banga's sentencing guidelines. PSR ¶¶ 27-45. The offense level for alien in possession of a firearm (Count 1) is 14, and the offense level for possession of controlled substances with intent to distribute (Count 2) is 24. The government agrees that the counts do not group. *See* PSR ¶ 28; USSG § 3D1.2. Given that the offenses do not group, the sentencing guidelines direct that the group with the highest offense level controls, and any group nine or more levels less serious should be disregarded. USSG § 3D1.4. Accordingly, Banga's offense level is 24, which drops to 21 after acceptance. The government also agrees that Banga

United States' Sentencing Memorandum - 3
*United States v. Banga*, CR25-0013JNW

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

receives no criminal history points; however, he does not qualify as a zero point offender because Count 1 is a firearms offense. *See* USSG § 4C1.1(a)(7).

With an offense level of 21 and a Criminal History Category of I, the applicable guidelines range is 37-46 months. Pursuant to the parties' plea agreement, the government agreed to cap its recommendation at the low end of the sentencing guidelines.

### III.    FACTORS RELATED TO SENTENCING RECOMMENDATION

The United States respectfully requests that the Court sentence Banga to 37 months of confinement, followed by a three-year term of supervised release. The United States believes this sentence is appropriate in light of "the nature and circumstances of the offense," and the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," and "to protect the public from further crimes of the defendant." 18 U.S.C. §§ 3553(a)(1), (a)(2)(A), and (a)(2)(C). A review of pertinent Section 3553(a) sentencing factors, below, supports the recommended sentence.

### A.    Nature and Circumstances, and Seriousness of the Offense

Issuing a low end guidelines sentence to Banga would be appropriate in light of the seriousness of his offense. In January 2024, Banga entered the United States illegally and brought a loaded shotgun with him. To make matters worse, he disabled government camera technology used for border surveillance to try to hide his activity from law enforcement. And when law enforcement eventually found and approached him, he fled and abandoned his shotgun. This conduct meaningfully compromised border security and evinces a rather callous disregard for applicable immigration regulations. Banga also unnecessarily placed CBP and members of the public in danger when he abandoned his shotgun while it was still loaded in a place where a member of the public could have happened upon it had it not been recovered by agents.

United States' Sentencing Memorandum - 4
*United States v. Banga*, CR25-0013JNW

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Banga's conduct would have been troubling had it been limited to only his unlawful conduct January 2024. But after Banga was confronted by law enforcement at the border the first time, he entered illegally again in December 2024, and this time he brought distribution quantities of MDMA and other drug trafficking tools with him. Messages from Banga's phone confirmed that he was involved in drug trafficking. This kind of conduct—trafficking narcotics across international borders for distribution in the United States—is alarming and presents serious public safety and national security concerns that should not be taken lightly.

The government acknowledges that it does not have evidence to show that Banga used his shotgun to commit violence against anyone or that he was able to successfully distribute significant quantities of narcotics in the United States before he was apprehended. But the fact that he was not caught in the act of causing harm to others or distributing narcotics should not unduly detract from the severity of the actions that Banga admits he took in this case. Border security is of paramount importance to the government—especially when it comes to preventing firearms and narcotics from unlawfully entering the country. Banga flagrantly disregarded border security measures by crossing the border illegally on multiple occasions with drugs and a firearm. His unlawful conduct stopped only after he was arrested. That kind of serious conduct merits a within-guidelines sentence, which supports the government's 37 month recommendation.

**B.    History and Characteristics of the Defendant**

On balance, the government does not view Banga's personal history and characteristics as mitigating or aggravating factors that meaningfully impact the government's sentencing recommendation. Although the government appreciates the fact that this is Banga's first reported run in with the criminal justice system, the guidelines account for that through Banga's criminal history category calculation.

United States' Sentencing Memorandum - 5
*United States v. Banga*, CR25-0013JNW

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

According to the PSR, Banga appears to have had opportunities to lead a pro-social life—he is educated, he appears to have family support, and he has a low ACEs score. The government acknowledges that Banga self-reported mental health issues, substance abuse disorders, and difficulties suffered during the COVID-19 pandemic that may have contributed to his conduct. PSR ¶¶ 67-68, 72. Unfortunately, the lack of any formal diagnosis in the current record makes it difficult for the government to evaluate those self-reports and determine to what extent those reported circumstances mitigate the severity of his conduct in this case. Regardless, the government believes that its low end guidelines recommendation of 37 months adequately balances any potential mitigating factors in Banga's history and personal characteristics with the severity of his conduct.

**C.     Need to Promote Respect for the Law, Provide Just Punishment for the Offense, and Afford Adequate Deterrence**

A low end guidelines sentence would also promote respect for the law and, hopefully, deter Banga and others from engaging in similar unlawful conduct at the Canadian border in the future. As discussed above, Banga's conduct reflects a meaningful disregard for border security regulations and law enforcement. He is a repeat offender when it comes to illegal border crossings, which is concerning in and of itself. However, his most galling choice was his decision to unlawfully enter the United States a second time with approximately a pound and a half of MDMA in his possession after he had fled from law enforcement once already. Although successful flight from law enforcement is concerning in its own right and not something that should be encouraged, Banga's escape gave him an opportunity to reset and stop this unlawful pattern of behavior. Instead of capitalizing on that opportunity, he doubled down and brought illegal narcotics across the border. That kind of conduct shows a disregard for the rule of law, and it merits a meaningful sentence in response.

General and specific deterrence are also important in this case. On specific deterrence, the government hopes that Banga will take this offense seriously and use it as

United States' Sentencing Memorandum - 6
*United States v. Banga*, CR25-0013JNW

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

a springboard back to a productive life upon his release. A low end guidelines sentence of 37 months will hopefully be sufficient, but no greater than necessary, to deter him from engaging in this kind of conduct again when he is released. General deterrence also matters here. *See United States v. Onuoha*, 820 F.3d 1049, 1056 (9th Cir. 2016) ("A conviction and resulting sentence serves more purposes than the incapacitation, specific deterrence, and rehabilitation of an individual; general deterrence of the serious crime at issue here is also an important consideration."). National border security is an important federal issue, and this kind of illegal border activity presents meaningful public safety and national security challenges that need to be met with swift consequences. A guidelines sentence will hopefully help dissuade others in Banga's position from attempting to compromise border security in the same way that he did.

### D. The Recommended Sentence Would Avoid Sentencing Disparities

Section 3553(a)(6) requires the Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). Congress's "primary goal" with section 3553(a)(6) was promoting nationwide consistency in sentencing, *United States v. Jaycox*, 962 F.3d 1066, 1071 (9th Cir. 2020)—that is, to avoid "unjustified difference" across judges or districts, *United States v. Saeteurn*, 504 F.3d 1175, 1181 (9th Cir. 2007). The Guidelines, which are themselves an anti-disparity formula, are the best tool for achieving that goal. *See Gall v. United States*, 552 U.S. 38, 49, 54 (2007); *Rita v. United States*, 551 U.S. 338, 354 (2007); *United States v. Osinger*, 753 F.3d 939, 949 (9th Cir. 2014). Here, the government recommends an in-guidelines sentence at the bottom of Banga's applicable guidelines. That alone means there will be no unwanted disparities if the Court imposes the government's recommended sentence.

//

//

United States' Sentencing Memorandum - 7
*United States v. Banga*, CR25-0013JNW

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## IV. CONCLUSION

For all of the reasons set forth above, the governments respectfully recommends the Court impose a custodial sentence of 37 months, to be followed by a three year term of supervised release. The Court should also impose a mandatory fee of $200.

DATED this 7th day of August, 2025.

Respectfully submitted,

TEAL LUTHY MILLER
Acting United States Attorney

*s/ Dane A. Westermeyer*
DANE A. WESTERMEYER
Assistant United States Attorney
United States Attorney's Office
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
Phone: 206-553-2266
Email: dane.westermeyer@usdoj.gov

United States' Sentencing Memorandum - 8
*United States v. Banga*, CR25-0013JNW

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970